'WoRley, Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner, finally rejecting claims 17 and 18 of appellants’ application, serial No. 591,436, filed May 2, 1945, for a patent relating to “Leather Finishing.” No claims were allowed.
Claim 17 is directed to the method sought to be patented, and claim 18 covers a machine embodying that method. The appealed claims read as follows:
17. The method of finishing hides in a continuous operation, which consists in spraying a coat of finishing material evenly over one surface of the hide, then partially curing said coat to a semi-dry or tacky condition, subjecting said surface to a second spraying coat of finishing material before the preceding coat has entirely cooled and while in tacky condition, partially curing said last mentioned coat to a semi-dry or tacky condition, subjecting said surface to a third spraying coat of finishing material, and finally subjecting the hide surface thus treated to light rays for a sufficient time to completely dry and cure said coats.
18. A leather finishing machine consisting of an endless belt conveyor, means for driving said conveyor, a plurality of sprayers spaced apart along the conveyor and adapted to spray finishing material on a surface of skins carried by the conveyor, infra-red heating units adjacent to all but the last of the respective *1201 sprayers, said beating units so located and arranged as to direct their rays upon the skins carried by said conveyor immediately after said skins pass from said sprayers to cure the coatings to a tacky condition, the speed of travel of the conveyor with respect to the location of the spraying and heating units being such as to carry the skins from one sprayer and heating unit to another before the coating has entirely cooled and is in a semi-dry or tacky condition, and infra-red heating units adjacent to the last sprayer to complete the drying and curing of the coatings applied by the sprayers.
The Primary Examiner rejected the claims on the following references:
Elliott, 1,702,043, February 12, 1929.
MacDonald, 2,330,300, September 28,1943.
Appellants’ specification discloses a method of “finishing” leather of various kinds, particularly that intended for use in the manufacture of garments, gloves, shoes, etc. Appellants’ brief states that “finishing” is one of the steps in processing hides for commercial use as leather, and gives the skins the final characteristics which make them attractive in appearance and with surfaces which render them desirable for use.
According to the specification, the common method of finishing hides has been to apply the finishing materials to the hide with hand swabs, and then to hang the hides in tunnels for drying with hot air. Sometimes the finish is applied with brushes or sprays, and the hides then passed over a conveyor belt where they are swabbed by hand to even out the brush marks prior to air drying. Appellants state that usually only one coat of finish is applied at a time, and since several coats are frequently required to secure the desired result, the hides must be rehandled several times, thus increasing the time and cost of finishing.
Appellants- propose to eliminate much of the expense and inefficiency of the previous methods by applying the finish and drying it in one continuous mechanical operation. To accomplish this they utilize a conveyor belt which passes the hides alternately through four .sets of finish-applying sprayers, and under four banks of infra-red lamps. The infra-red lamps are so arranged that the finish which is applied to the hide as it passes under one spray booth is partially dried to a warm and tacky condition when the hide reaches the next spray booth. The final bank of lamps is sufficiently long so that the finish is completely dry by the time the hide reaches the end of the conveyor belt.
Appellants have placed in the record affidavits and other documentary evidence showing that their method has enjoyed substantial commercial success. It further appears that a machine embodying appellants’ method has been placed in commercial operation, and that *1202 its use has resulted in savings in labor and production costs, in time of operation, and in floor space required. Furthermore, it is stated that infra-red drying leaves the leather soft and pliable, thus eliminating the step of “finish staking or breaking the leather back soft again.” It is also claimed that appellants’ method results in a more uniform coverage of finish, thus allowing the skins to be “up-graded” with a consequent increase in value.
The evidence of commercial success introduced by appellants is uncontroverted, and there seems to be no reason for doubting its truth.
The patent to Elliott shows a method and apparatus for making patent leather. In the method of Elliott a conveyor belt passes hides under a spray of sizing varnish, through a drying chamber or oven, under a varnish spray, through another drier, and finally under ultraviolet ray lamps.
Elliott states in his specification that the prior methods in the art Involved several hand operations: first, one coat of varnish was applied by hand, and allowed to dry for several hours; then a second coat of varnish was applied, and the leather was baked in drying ovens for eight to ten hours; finally, the leather was subjected to the rays of the sun in an open field. Elliott claimed that his method obviated the laborious and time-consuming intermediate handling incident to the prior methods, and particularly stressed the fact that the ultra-violet treatment, which is the final step in his process, effects a cui'ing of the varnish surface “whereby undesirable tackiness of the surface may be caused to disappear. ” Elliott states that after the hides pass through the second sprayer, they “then pass through a second drying chamber or drier 10 where they are subjected to a preliminary drying after which they pass under the bank of silica tube mercury-arc lamps. Here the drying or curing of the varnished surfaces substantially to reduce or to remove tackiness is accelerated, * * *.” (Italics ours.) Thus it appears that the second coat of varnish in Elliott is applied while the first coat is in a tacky condition.
The patent to MacDonald shows an apparatus for applying cork and latex to a fabric material. He utilizes the conveyor mechanism, a.nd in one variation of his device he discloses that the material to be coated is passed through a spraying cabinet or booth where a priming coat of latex is applied, and that the material is then passed under infra-red lamps where the priming coat is dried to a “slightly tacky state.” The material is then passed through another spraying booth •where it is coated with cork and latex, then under a bank of infra-red lamps where the sprayed mixture is dried and the rubber vulcanized, and finally through calender rolls where the material is pressed to the desired thickness.
*1203 The examiner rejected the appealed claims as “unpatentable over Elliott in view of McDonald [sic].” He stated that
* * * It is not seen to involve inventive skill to use infra-red heating means in the Elliott apparatus since this would amount to nothing more than a substitution of one heating means for another especially in view of the McDonald [sic] disclosure of infra-red heating means applied to a continuous coating process. To regulate the speed of the conveyor and to locate the spraying and drying means so that one coating is not completely dried before the next one is applied are purely manipulative steps which cannot be relied upon to render an apparatus claim patentable. The number of sprayers and drying units used involves a question of choice and would depend on the number of coatings desired.
The affidavit of William F. Schumann, Jr., has been very carefully considered but is not seen to render the prior art references less pertinent. Although affiant has demonstarted commercial success, it is not seen that sufficient doubt as to patentability exists so as to overcome the rejection based on the prior art. * * *
The Board of Appeals affirmed the bolding of the examiner, and found that “finishing” as used in the application was not used in a special sense so as to make the Elliott reference a different art; that at the time of filing of the involved application the use of infra-red heating lamps was so common and well known that the substitution of infra-red lamps for previously used drying heaters was quite obvious; and that addition of a third coating step and drying step was mere obvious repetition. The board held that the thought of applying one layer of finishing material while the preceding coat was still tacky was present by implication in Elliott, and that it was not necessary to rely on MacDonald.
Before this court, appellants argue that the Elliott reference is not applicable to the present application, stating,
There are at least three fundamental differences between the disclosure of this patent and applicants’ invention:
(1) The materials used are different.
(2) The process is different.
(3) The results obtained (if any could be obtained by Elliott’s apparatus) are different.
It is argued that Elliott is a “mere paper patent,” that it never went into commercial use, and that it is impractical and inoperative on its face.
It is argued for appellants that the patent of Elliott uses ultraviolet rays which are adapted for oxidizing purposes but which would be wholly useless for leather finishing in accordance with applicants’ invention. It is claimed that ultra-violet rays dry the surface only, and that leather finishing requires drying from the inside out for which infra-red is peculiarly adapted.
*1204 Appellants argue that the MacDonald reference is from a different art than that of the instant application, and would not teach any person skilled in the art how to practice the present method.
Appellants cite as error the failure of the examiner to “give due weight to the commercial success of our invention,” stating,
Such commercial success is not intended to show invention, but is of particular interest in showing the novelty and importance of applicants’ invention and of its advance in the art. * * *
Before we proceed to a discussion of the appealed claims, it may be well to consider the law governing a showing of “commercial success.” It is well established that outstanding commercial success may be evidence of invention, and in a doubtful case may be sufficient to resolve the doubt in favor of a finding of invention. In re Russell, 34 C. C. P. A. (Patents) 721, 157 F. (2d) 190, 71 USPQ 85. But it is also well established that commercial success of a purported in.novation must not be used to create a doubt regarding inventiveness where none would exist otherwise. Lempco Products v. Timken-Detroit Axle Co., 110 F. (2d) 307; In re Hock, 35 C. C. P. A. (Patents) 1235, 168 F. (2d) 540, 78 USPQ 75.
We will consider the method claim 17 first. It will be noted that this claim is extremely broad in its scope, having no limitation as to the type of intermediate drying means, and stating only that the final drying and curing is by means of “light rays.” The only distinctions of any note we perceive between this claim and the method of Elliott is that the claim is directed to a method of “finishing hides” rather than making patent leather; that there are three spraying steps rather than the two of Elliott; and that the second and third coats are applied while the preceding coat is “tacky.”
We are in agreement with the board that the number of spraying and drying steps is immaterial, and addition or subtraction of such steps is obvious. This is evidenced by the fact that appellants show in their specification four pairs of sprayers and driers, while the claim is limited to three pairs. There does not seem to be anything inventive in applying the second and third coats of finishing material while the preceding coat is still tacky, and we agree with the board in its holding that this feature is disclosed in Elliott. Furthermore, we find in appellants’ specification that more than one coat of finishing material was sometimes applied at one time in the prior art methods, from which it may be fairly implied that one coat of finish was applied in prior methods before the preceding coat was completely dry. We also note that MacDonald discloses this feature of the claim. As to the remaining distinction, that the Elliott patent may be directed to a different art than that of the appealed claims, we do not feel that such is the case. We feel that the general field *1205 which covers both disclosures is that of preparing leather for commercial use, and that an artisan skilled in that field, having knowledge of Elliott’s method, would not require inventiveness to adapt that method to the “finishing” of hides.
Except for these distinctions, which we do not feel to be material, claim 17 reads directly on Elliott, and we do not believe that it is patentable thereover.
Claim 18 contains only one distinction from claim 17 which needs to be noted, namely, that the claim specifies infrared drying means, which means are not shown in Elliott. We agree with the board in its belief that infrared was well known as a drying means at the time of the filing of appellants’ application, and that the adaption of infrared to dry leather finishes did not require invention. It is to be noted that MacDonald treats infrared as a common means of drying materials quickly, which tends to support the board’s opinion as to its obviousness. Thus, we do not believe claim 18 patentably defines over Elliott.
While the board did not explicitly overrule the MacDonald reference, it did state it was not necessary to the rejection. In this view we concur, and reject the claims as unpatentable over Elliott alone, referring to MacDonald only to corroborate our findings.
One thing remains to be noted. Appellants’ objection that the Elliott patent is “a mere paper patent” cannot be recognized by this court. Everyone is charged with knowledge of the prior patents, and the failure of a patentee to properly exploit his invention does not furnish grounds for the subsequent-granting of another patent on substantially the same invention. As stated by Judge Learned Hand in Western States Mach. Co. v. S. S. Hefworth Co., 147 F. (2d) 845, “A patent may have lain for years unheeded, as little a contribution to the sum of knowledge as though it had never existed, an idle gesture long since drifted into oblivion. Nevertheless, it will be as effective to invalidate a new patent, as though it had entered into the very life blood of the industry.” See In re Phipps, 33 C. C. P. A. (Patents) 861, 154 F. (2d) 116, 69 USPQ 88.
We have considered all the arguments advanced by appellants but have not found them sufficient to raise any doubt in our mind as to the correctness of the decision below. For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.